IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONTINENTAL WARRANTY, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civ. No. 13-1187-SLR |
| JENNIFER WARNER and JOSEPH VIVIANI, | ) |
| Defendants. | ) |

**MEMORANDUM**

At Wilmington this 5r day of June, 2015, having reviewed defendant Jennifer Warner's motion for summary judgment (D.I. 25), and the papers filed in connection therewith; the court issues its decision based on the following reasoning:

1. **Introduction.** On May 30, 2013, plaintiff Continental Warranty, Inc. ("plaintiff"), a vehicle service contract provider, filed a verified complaint against its former sales representatives defendants Jennifer Warner ("Warner") and Joseph Viviani ("Viviani") (collectively, "defendants") in the Delaware Court of Chancery. (D.I. 1, ex. A) Plaintiff alleged breach of contract with respect to an "Employee Non-Compete Agreement" ("the agreement") and interference with existing and prospective business relations against defendants, seeking damages and injunctive relief for each claim. (*Id.*) On July 3, 2013, defendants removed the action to this court. (D.I. 1) By an order dated June 17, 2014, the court denied plaintiff's motion to remand. (D.I. 7) Trial is currently scheduled to begin on July 21, 2015. Presently before the court is Warner's

motion for summary judgment on each claim. (D.I. 25) The court has jurisdiction over these issues pursuant to 28 U.S.C. §§ 1332 and 1441.

2. **Background.** Plaintiff hired Warner as an employee on January 2, 2007. (D.I. 4, ex. 2 at ¶ 2) Warner sold vehicle service contracts to dealerships and customers in New Jersey, New York, and Pennsylvania. (D.I. 1, ex. A at ¶¶ 9, 13) On June 23, 2009, Warner signed an "Employee Non-Compete Agreement" upon plaintiff's request. (D.I. 1, ex. A, ex. A; D.I. 27, ex. B at 38:1-39:12) The agreement states that the employee "agrees not to directly or indirectly compete with the business of the Company . . . during the period of employment and for a period of two years following termination of employment" and that the agreement "shall be in full force and effect for two years, commencing with the date of employment termination." (D.I. 1, ex. A, ex. A)

3. Warner contends that, after she signed the agreement, plaintiff requested that she form a corporation that would allow her to work for plaintiff as an independent contractor. (D.I. 27, ex. B at 26:8-11) On July 7, 2009, Warner formed Jadeco, Inc. ("Jadeco"), a Pennsylvania corporation. (D.I. 27, ex. D) Warner is Jadeco's sole shareholder. (D.I. 27, ex B at 28:8-12) On July 24, 2009, Warner's employment with plaintiff ended. (D.I. 4, ex. 2 at ¶ 5) On July 25, 2009, Warner became Jadeco's employee and plaintiff retained Jadeco as an independent contractor. (*Id.* at ¶ 11) Plaintiff contends that Warner's change from employee to independent contractor has no bearing on the enforceability of the non-compete agreement. Warner contends that the non-compete agreement expired on July 24, 2011, two years after her last day working as plaintiff's employee. Plaintiff has not alleged that Warner violated the non-compete agreement on or before July 24, 2011.

2

4. Warner met with James Thompson of Automotive Financial Management ("AFM") in March 2013 about potential employment with AFM as an independent contractor. (D.I. 27, ex. F at 23:19-24) AFM brokers insurance and warranty products to car dealerships from a variety of providers. (Id. at 17:3-8) Warner completed a W-9 form for AFM on March 20, 2013. (D.I. 27, ex. E) In March 2013, plaintiff informed Warner that selling vehicle service contracts for Continental's competitors violated the agreement. (D.I. 27, ex. B at 41:22-42:1) Plaintiff alleges that Warner, through her association with AFM, solicited plaintiff's existing customers and offered competing vehicle service contracts before April 12, 2013.[1] (D.I. 1, ex. A at ¶ 19) Plaintiff's relationship with Jadeco ended on April 12, 2013. (D.I. 1, ex. A at ¶ 16)

5. Plaintiff sent Warner a cease and desist letter alleging violations of her non-compete agreement on or about April 26, 2013. (D.I. 1, ex. A, ex. B) Plaintiff contends that Warner continued to violate the non-compete agreement after April 26, 2013. (D.I. 1, ex. A at ¶¶ 24, 29)

6. **Standard.** "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 475, 586 n.10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by

---

[1] Plaintiff alleges that Warner contacted three Pennsylvania dealerships before April 12, 2013, about vehicle service contracts from plaintiff's competitor CareGuard. Plaintiff alleges that these three dealerships were among the clients that plaintiff assigned to Warner during her engagement as plaintiff's vehicle service contracts salesperson. In her deposition testimony, Warner denied that she promoted CareGuard products.

3

citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

7. To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

4

(1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

8. **Discussion.** The parties agree that Warner formed a valid contract by executing the "Employee Non-Compete Agreement" on June 23, 2009.[2] The parties dispute whether the agreement remained in effect in March 2013 when the earliest alleged breach occurred. It is undisputed that Delaware law governs the interpretation of the agreement.

9. General principles of contract interpretation guide Delaware courts when interpreting non-compete agreements. *See Delaware Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at *6 (Del. Ch. Oct. 23, 2002). In Delaware, the interpretation of contracts is a matter of law for the court to determine. *See Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). A court's interpretation of a contract "will give priority to the parties' intentions as reflected in the four corners of the agreement." *GMG Capital Invs., LLC v. Athenian *328 Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (citing *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009)). "In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein." *E.I. du Pont*

---

[2] *See All Pro Maids, Inc. v. Layton*, 2004 WL 1878784, at *5 (Del. Ch. Aug. 9, 2004) aff'd, 880 A.2d 1047 (Del. 2005) ("To be enforceable, a covenant not to compete must (1) meet general contract law requirements, (2) be reasonable in scope and duration, both geographically and temporally, (3) advance a legitimate economic interest of the party enforcing the covenant, and (4) survive a balance of the equities."). The agreement at bar restricted competition within "a radius of one thousand miles from the present location of the Company" for "two years following the termination of employment."

5

*de Nemours and Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985) (citations omitted). "[T]he meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan." *Id.*

10. If a contract's terms are clear and unambiguous, the court will interpret such terms according to their ordinary and usual meaning. *See Paul*, 974 A.2d at 145. Contract terms are held to be clear and unambiguous "when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) (citing *Rhone–Poulenc*, 616 A.2d at 1196). "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Rhone–Poulenc*, 616 A.2d at 1195. If a court determines that a contractual provision is ambiguous, the "court may consider evidence of prior agreements and communications of the parties as well as trade usage or course of dealing." *Eagle Indus.*, 702 A.2d at 1233.

11. The agreement states that the restrictions on competition "shall be in full force and effect for two years, commencing with the date of employment termination." Warner argues that her employment terminated on July 24, 2009, the day before she became an independent contractor working for plaintiff through Jadeco. Plaintiff argues that the agreement contemplates employment as both an employee and an

6

independent contractor and that the relevant date of employment termination was April 12, 2013.

12. Plaintiff further contends that recognizing a distinction between the status of an employee and an independent contractor places form over substance. Plaintiff asserts that its managers "are business people, not lawyers," who do not attach legal significance to these terms. (D.I. 27 at 6) This argument implicitly asks the court to consider parol evidence regarding plaintiff's trade usage of the terms, but plaintiff has not satisfied the threshold step of showing the terms are ambiguous.

13. Delaware law requires "uncertainty in the meaning and application of contract language" before courts may consider extrinsic evidence. *Eagle Indus.*, 702 A.2d at 1232 (citing *Pellaton v. Bank of N.Y.*, 592 A.2d 473, 478 (Del. 1991)). "The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Id.* at 1196 (citing *Steigler v. Insurance Company of North America*, 384 A.2d 398, 401 (Del. 1978)). The court is persuaded that a reasonable person would distinguish between the terms "employee" and "independent contractor."[3] Accordingly, the court will not consider plaintiff's subjective meaning in its analysis. Considering only the clear and unambiguous text of the agreement, the court does not discern objective manifestations

---

[3] The court notes that in the context of non-compete agreements, "there are strong reasons to recognize the distinction." *EDIX Media Grp., Inc. v. Mahani*, 2006 WL 3742595, at *7 (Del. Ch. Dec. 12, 2006). In *EDIX*, the Delaware Court of Chancery supported its finding that the two forms of employment represent substantially different categories of labor by relying on differences between employees and independent contractors with respect to autonomy, benefits, and training. *Id.*

7

of intent for the agreement to extend to an employee's subsequent employment as an independent contractor.[4]

14. For the purposes of the agreement, the "period of employment" and "the date of employment termination" correspond to the duration of Warner's status as plaintiff's employee. The court finds that Warner's non-compete agreement expired on July 24, 2011. Because plaintiff has not alleged that Warner violated the agreement prior to this date, the breach of contract claim must fail.

15. Plaintiff also alleges that Warner interfered with existing and prospective business relations. Plaintiff correctly notes that Warner misstated this allegation as interference with contractual relations in her brief. As Warner has not adequately briefed this issue, the court will not rule on plaintiff's interference claim at this stage in the litigation.

16. **Conclusion.** For the foregoing reasons, Warner's motion for summary judgment is granted-in-part and denied-in-part.

An appropriate order shall issue.

                                                             */s/*
United States District Judge

---

[4] The court rejects plaintiff's argument that Jadeco is bound by Warner's agreement because Jadeco is Warner's alter ego. The case plaintiff cites discusses Delaware's law on piercing the corporate veil to hold shareholders liable for a corporation's wrongs. This doctrine does not apply to the facts presented in this case.

8