IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONTINENTAL WARRANTY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 13-1187-SLR |
| | ) | |
| JENNIFER WARNER and JOSEPH VIVIANI, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

At Wilmington this 5th day of June, 2015, having reviewed defendant Joseph Viviani's motion for summary judgment (D.I. 23), and the papers filed in connection therewith; the court issues its decision based on the following reasoning:

1. **Introduction.** On May 30, 2013, plaintiff Continental Warranty, Inc. ("plaintiff"), a vehicle service contract provider, filed a verified complaint against its former sales representatives defendants Jennifer Warner ("Warner") and Joseph Viviani ("Viviani") (collectively, "defendants") in the Delaware Court of Chancery. (D.I. 1, ex. A) Plaintiff alleged breach of contract with respect to a non-compete agreement contained within an employment application, interference with existing and prospective business relations, and defamation against Viviani, seeking damages and injunctive relief for each claim. (*Id.*) On July 3, 2013, defendants removed the action to this court. (D.I. 1) By an order dated June 17, 2014, the court denied plaintiff's motion to remand. (D.I. 7) Trial is currently scheduled to begin on July 21, 2015. Presently before the court is

Viviani's motion for summary judgment on each claim. (D.I. 23) The court has jurisdiction over these issues pursuant to 28 U.S.C. §§ 1332 and 1441.

2. **Background.** Viviani completed an "Application for Employment" ("the application") on September 27, 2010. (D.I. 4, ex. 3 at ¶ 2) The parties agree that after Viviani completed the application, plaintiff hired Viviani as an independent contractor. (D.I. 24 at 6; D.I. 28 at 10-11) The application contained an "Employee Non-Compete Agreement" ("the agreement") that states that the employee "agrees not to directly or indirectly compete with the business of the Company . . . during the period of employment and for a period of two years following termination of employment" and that the agreement "shall be in full force and effect for two years, commencing with the date of employment termination." (D.I. 1, ex. A, ex. C) The application twice states that the document "does [not] create a contract of employment, offer, or promise of employment." (*Id.*) The application also includes a provision stating that "as a condition of employment . . . I may be required to sign a confidentiality, non-compete, and/or conflict of interest statement." (*Id.*) Plaintiff alleges that it required Viviani to execute the agreement as a condition of his engagement as an independent contractor. (D.I. 1, ex. A at ¶ 32) Viviani contends that he executed the agreement as part of his application for a position as plaintiff's employee. (D.I. 4, ex. 3 at ¶ 2)

3. James Thompson of Automotive Financial Management ("AFM") contacted Viviani in April 2013 to discuss selling reinsurance contracts. (D.I. 28, ex. C at 76:1-8; 18-21) AFM brokers insurance and warranty products to car dealerships from a variety of providers. (D.I. 28, ex. D at 17:3-8) Viviani completed a W-9 form for AFM on April 20 or 26, 2013. (D.I. 28, ex. F) Viviani tendered his resignation to plaintiff around April

11, 2013, and offered to continue working until May 1, 2013. (D.I. 28, ex. C at 57:17-21) Plaintiff alleges that Viviani, through his association with AFM, solicited plaintiff's existing customers and offered competing vehicle service contracts before April 26, 2013. (D.I. 1, ex. A at ¶¶ 40-41) Plaintiff terminated its relationship with Viviani on April 26, 2013. (D.I. 1, ex. A at ¶ 45)

4. Plaintiff sent Viviani a cease and desist letter alleging violations of his non-compete agreement on or about April 26, 2013. (D.I. 1, ex. A, ex. D) Plaintiff contends that Viviani continued to violate the non-compete agreement after April 26, 2013. (D.I. 1, ex. A at ¶¶ 47, 55)

5. **Standard.** "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 475, 586 n.10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation

3

marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

6. To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service,* 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

7. **Discussion.** The parties dispute whether Viviani's application created an enforceable agreement not to compete with plaintiff. It is undisputed that Delaware law governs the formation of any such agreement. "Under Delaware law[,] a contract comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended

4

to be bound by their agreement on all essential terms." *Rohm and Haas Elec. Materials, LLC v. Honeywell Intern., Inc.*, 2009 WL 1033651, at *5 (D. Del. 2009) (quotations and citations omitted). A contract contains all essential terms and, therefore, is enforceable when "it establishes the heart of the agreement;" it need not, however, contain all terms as some matters may be left for future negotiation. *Parker–Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, 589 F. Supp. 2d 457, 463 (D. Del. 2008). In other words, "[u]ntil it is reasonable to conclude, in light of all of these surrounding circumstances, that all of the points that the parties themselves regard as essential have been expressly or . . . implicitly resolved, the parties have not finished their negotiations and have not formed a contract." *Leeds v. First Allied Conn. Corp.*, 521 A.2d 1095, 1102 (Del. Ch. 1986). In short, "an enforceable contract exists where a reasonable person would conclude that the parties had reached a definite and final agreement on all essential terms." *Rohm and Haas*, 2009 WL 1033651, at *5.

8. The court notes that "[w]here there is no mutual assent or meeting of the minds, there is no enforceable contract in Delaware." *Thomas v. Thomas*, 2010 WL 1452872, at *4 (Del. Com. Pl. Mar. 19, 2010) (citing *Rodgers v. Erickson Air–Crane Co. L.L.C.*, 2000 WL 1211157, at *6 (Del. Super. Aug. 17, 2000)). It is axiomatic that mutual assent is not achieved when both parties unknowingly attach materially different meanings to a contract term. Restatement (Second) of Contracts § 20(1) (1981). Viviani argues that he "applied for a position as an employee." (D.I. 29 at 2) Plaintiff, by contrast, argues that "Viviani was only applying for, and was only being considered for, employment as an independent contractor." (D.I. 28 at 10) The conflicting meanings

5

the parties attach to the application demonstrate that there was never a meeting of the minds with respect to the application's legal effect.

9. In addition to the divergence of the parties' subjective views, the application's language does not objectively manifest the intent to be bound. The application includes the language "this application [does not] create a contract of employment, offer, or promise of employment." Plaintiff contends that this provision prohibits the formation of an employment contract but permits the application to establish other contractual obligations. Plaintiff reads the provision as one term describing the at-will nature of prospective employment within a larger agreement establishing the contractual obligations between plaintiff and applicants. The presence of conditional language elsewhere in the application, however, does not support the claim that the application establishes any larger agreement The conditional language – stating "if hired by the Company, employment is on an at-will basis" and "as a condition of employment . . . I may be required to sign a confidentiality, non-compete, and/or conflict of interest statement" – classifies the application as a pre-employment document that does not create contractual obligations until an employment relationship begins. The application does not initiate an employment relationship because it does not create an "offer, or promise of employment." Moreover, the parties do not dispute that Viviani eventually worked for plaintiff as an independent contractor and not as an employee.[1] Standing alone, the application does not manifest the objective intent to be bound.

---

[1] The court rejects plaintiff's argument that the distinction between status as an employee and an independent contractor is "semantics [that] place form over substance." (D.I. 28 at 11) A reasonable person would interpret the application to bind only applicants hired as employees.

10. The court also notes the application does not manifest the objective intent to be bound because the application anticipates future negotiations. Plaintiff and Viviani continued to negotiate "the heart of the agreement" after Viviani completed the application. *Parker–Hannifin*, 589 F. Supp. 2d at 463. As noted above, the issue of whether Viviani would be employed as an employee or independent contractor remained unresolved when Viviani completed the application. Viviani also testified that the amount of his compensation was "open-ended" before he started working for plaintiff. (D.I. 28, ex. C at 21:17-22:9) The application itself is a standard form that does not specify the nature, time, or place of the work to be performed. In light of these omissions, the application does not indicate a "definite and final agreement on all essential terms" necessary for a contract between plaintiff and Viviani. *Rohm and Haas*, 2009 WL 1033651, at *5.

11. Plaintiff argues that failure to give effect to the non-compete agreement violates the rule that "contract terms should not be read to be illusory or meaningless." *Troumouhis v. State*, 2006 WL 1579776, at *4 (Del. Super. 2006). This rule of interpretation presupposes the existence of a contract. The rule does not apply here because a reasonable person would not conclude, based on the application as a whole, that the parties demonstrated the intent to be bound.

12. Plaintiff's suggestion that the non-compete agreement stands alone as a separate enforceable contract is unpersuasive. "Whether or not the terms of a contract are severable is purely a question of the intent of the parties." *Tracey v. Franklin*, 67 A.2d 56, 61 (Del. Ch. 1949). When determining the parties' intent regarding severability, Delaware courts ask whether the parties gave a single assent to the whole

transaction or whether they assented separately to several things. *Orenstein v. Kahn*, 119 A. 444, 446 (Del. Ch. 1922). The application contained two subsections, both of which contained the language disclaiming the creation of an employment contract. In the first section, titled "Application for Employment," Viviani entered personal information including his address, educational background and work history. The second section, titled "Applicant Certification," contained nine paragraphs of conditions for prospective employment and the text of the agreement. The application includes only one signature line and does not contain a severability clause. The court finds that the agreement is not severable under Delaware law under these circumstances.

13. Plaintiff also alleges that Viviani interfered with existing and prospective business relations. Plaintiff correctly notes that Viviani misstated this allegation as interference with contractual relations in his brief. As Viviani has not adequately briefed this issue, the court will not rule on plaintiff's interference claim at this stage in the litigation.

14. The court will grant Viviani's motion for summary judgment with respect to the defamation claims because plaintiff did not address these issues in its answering brief.

15. **Conclusion.** For the foregoing reasons, Viviani's motion for summary judgment is granted-in-part and denied-in-part.

An appropriate order shall issue.

_____
United States District Judge